KENNEDY, Circuit Judge,
concurring.
I agree with the majority that plaintiffs case is not moot. I also agree with the majority that plaintiff did request compensatory education at the administrative hearing in that he was asking for a transitional plan and transitional services so that he could achieve some type of community integration and level of independence in the work world.
I agree with the ALJ and the district court’s original decision that the plaintiff, who had the burden of proof to establish that Adam failed to achieve progress at Shrine School, did not present any evidence that he had not made progress. The evidence plaintiff presented established only that with other assistive technology he might well have made greater progress.
However, I would find that the ALJ’s determination that Adam’s transitional plans complied with the IDEA was not supported by substantial evidence and that he is, therefore, entitled to relief.
The ALJ relied on the testimony of Mr. Raney that the plan documents (beginning with the 1994 IEP) “go completely beyond requirements” to support the conclusion that Adam’s transitional plans met IDEA requirements. However, Mrs. Barnett testified that Adam received no transitional services and the school district offered no evidence to the contrary. There was no evidence he received transitional services. Karen Anderson, an instructor in the University of Memphis College of Education, who taught undergraduate and graduate teachers how to conduct IEP meetings and write IEPs, and was formerly director of the Mid-South Access Center for Technology at the university, an evaluation site for individuals with disabilities of all ages, testified that Adam’s transitional goals were first written beginning in 1994. (Hearing Transcript 334) None were noted as being completed. She also testified that some were inappropriate for a transition plan. For example, one goal states at age 20 Adam will acquire a driver’s license. There was no explanation of how he could attempt to achieve that goal or what steps could be taken. There was no indication anywhere in the transition plans about what Adam would be doing vocationally after schooling. Nothing about possible employment—nothing even about supported employment. Ms. DePriest, the Director of Exceptional Children for the Memphis City School System who monitors compliance with the IDEA, testified that nothing in Adam’s record indicated he had received any vocational rehabilitation services in the five years before the hearing. (Hearing Transcript 385).
Ms. DePriest acknowledged that there were no records that showed any plan as to how Adam would attempt to achieve a driver’s license and that many of the stated objectives that involved the parents doing something were not designed for Adam’s unique needs to transition him to the real world. (Hearing Transcript 390-391).
Not until the 1998-99 IEP did a transition plan say anything about interaction with community agencies and that gainful employment is a goal. (Hearing T. 399) However, Adam was determined during the course of that year not to be entitled to vocational rehabilitation.
Indeed, Ms. DePriest acknowledged that even Adam’s transition plan for 1998 was not an appropriate transition plan.
Because the transitional plans were such an important component of the IEP’s for the last few years of Shrine school, I agree *131 that he did not receive a FRAP during his last years at Shrine School and concur.